# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK HAIGHT, : | |
| : | |
| Plaintiff, : | No. 1:18-cv-00068-SPB |
| : | |
| v. : | |
| : | |
| ERIE COUNTY, : | **JURY TRIAL DEMANDED** |
| : | |
| Defendant. : | |

## COMPLAINT

Plaintiff Patrick Haight ("Mr. Haight") files this Complaint as follows:

## CONCISE STATEMENT OF FACTS

1. This action involves the excessive use of force against Mr. Haight while he was incarcerated at the Eric County Prison ("ECP") for non-violent offenses, which resulted in him sustaining life-threatening injuries including, among other things, strokes, kidney failure, collapsed or punctured lung, torn or restricted carotid arteries, acute closed head injuries, broken ribs, ruptured eye socket and numerous cuts and abrasions. The cause of the excessive force used against Mr. Haight was Defendant Erie County's ("Erie County") custom or practice of permitting or promoting its corrections officers to use excessive force against inmates at the ECP. In this action, at least twelve corrections officers—including two supervisory officers—assaulted Mr. Haight with closed fists and kicks and pepper sprayed him while he was handcuffed and shackled. Instead of providing Mr. Haight with immediate medical attention following the assault, he was placed in solitary confinement, and ultimately spent 15 days on life support because of his injuries. Mr. Haight brings this action pursuant to 42 U.S.C. § 1983 against Erie County for depriving him of his rights guaranteed by the Fourteenth Amendment of the United States Constitution to be free from the use of excessive force.

## JURISDICTION AND VENUE

2. This action is brought under the Fourteenth Amendment to the United States Constitution pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983. This action is also brought under Title II of the Americans with Disabilities Act, 28 U.S.C. § 12131, *et seq.* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* This Court has jurisdiction over these claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because each claim arose in Erie County, Pennsylvania in the Western District of Pennsylvania.

## PARTIES

4. Mr. Haight is adult individual residing in the Western District of Pennsylvania. Mr. Haight is United States Army veteran. He has bi-polar and anxiety disorder.

5. Erie County is a county of the third class located in the Commonwealth of Pennsylvania. Erie County operates and maintains the ECP, which is located at 1618 Ash Street, Erie, Pennsylvania 16503. At all relevant times, Erie County was acting by and through its duly authorized employees, agents and/or administrators of the ECP, who at all relevant times were acting within the course and scope of their employment, under color of state law, and in accordance with Erie County's policies, practices and customs. Erie County is sued in its official capacity.

## FACTS

6. On May 7, 2017, Mr. Haight was arrested at his residence for failing to appear for a court appearance stemming from criminal charges in December 2016, which asserted that he was driving under the influence of marijuana.

7. Mr. Haight, who had never previously been incarcerated, was taken to the ECP and his bond was set at $500.

8. Mr. Haight's initial screening and evaluation at the ECP stated no history of violent behavior, and, at all relevant times, Mr. Haight exhibited no violent behavior.

9. Mr. Haight was 52 years old and approximately 5'9" and 180 pounds.

10. At all relevant times, Mr. Haight was cooperative, compliant and non-aggressive to inmates and staff members at the ECP, including medical staff and corrections officers.

11. On May 10, 2017, while attempting to climb to the top bunk in his cell, Mr. Haight fell and injured his toe and thereafter requested medical treatment for his injured toe.

12. Corrections officers then escorted Mr. Haight to the medical office for treatment.

13. After receiving treatment for his toe from medical staff, one or more corrections officers returned to the medical office to escort Mr. Haight back to general population.

14. Those corrections officers were immediately aggressive toward Mr. Haight, who was not resisting, with one officer striking him in the face with a closed fist after he was in handcuffs.

15. The corrections officers then violently escorted Mr. Haight, who remained in handcuffs and shackles at all relevant times, down the hallway from the medical office where additional corrections officers converged upon him, began to strike him in the face and body with closed fists, and one officer pepper sprayed him in the eyes.

16. Mr. Haight was then brought to an isolated shower area where he was taken to the floor and assaulted with closed fists and kicks by numerous corrections officers.

17. Mr. Haight was ultimately dragged down a hallway to an empty gym where video surveillance captured six to ten corrections officers forming a circle or semi-circle around him as three to five other officers kneeled on, strangled and beat Mr. Haight with closed fists and kicks.

18. Video surveillance footage evidences that, during this part of the assault, Mr. Haight laid motionless on the gym floor in handcuffs and shackles while an off-duty corrections officer entered the circle or semi-circle and kicked him in the head.

19. Mr. Haight was then placed into a cell in the restrictive housing unit (the "RHU").

20. The RHU is a solitary confinement unit at the ECP.

21. Mr. Haight was not provided any medical treatment even though he had been pepper sprayed, lost consciousness, had severe bruising and was bleeding.

22. Mr. Haight's medical condition declined while in the RHU such that, in the early morning on May 11, 2017, he was taken to the University of Pittsburgh Medical Center, Hamot ("UPMC Hamot") for treatment of his injuries.

23. For unknown reasons, Mr. Haight was discharged only a few hours later.

24. Upon returning to the ECP, Mr. Haight complained to corrections officers and medical staff about rib and chest pain and shortness of breath.

25. At that time, medical staff at the ECP noted that Mr. Haight's eyes were swollen shut and he had bruises all over his face and extremities.

26. Mr. Haight was returned to UPMC Hamot on May 12, 2017.

27. Upon returning to UPMC Hamot, Mr. Haight was immediately placed on life support using dialysis and a ventilator, and was diagnosed as having multiple rib fractures, a punctured or collapsed lung and kidney failure as a result of the assault.

28. Mr. Haight had also suffered strokes from tears and/or restrictions to his carotid arteries that were caused during his assault.

29. Mr. Haight was ultimately diagnosed as having sustained, among other things, strokes, kidney failure, collapsed or punctured lung, torn or restricted carotid arteries, acute closed

head injuries, broken ribs, ruptured eye socket and numerous cuts and abrasions, all of which were caused by the assault.

30. Mr. Haight's physical manifestations from the assault were documented through photographic evidence.

31. While Mr. Haight was on life support at UPMC Hamot, supervisory officers at the ECP directed subordinate corrections officers that were involved in the assault to watch all available video surveillance and change their incident reports to match what they knew was shown by the videos.

32. On May 15, 2017, three days after being placed on life support, Heidi Karash, Director of Nursing at the ECP, informed Joshua Haight, Mr. Haight's son, and Jennifer Soltis, Mr. Haight's daughter ("Mrs. Soltis"), that their father was in the intensive care unit at UPMC Hamot on life support.

33. Mr. Haight was discharged from UPMC Hamot on May 27, 2017.

## COUNT I

### Violation of the Fourteenth Amendment for Unconstitutional Policies, Customs and Practices Pursuant to 42 U.S.C. § 1983

### (Mr. Haight v. Erie County)

34. All paragraphs herein are incorporated by reference.

35. There is a widespread custom and well-settled practice at the ECP that corrections officers are permitted to routinely use excessive force against inmates.

36. This custom or practice is evidenced by the fact that 10-12 corrections officers took part in assaulting Mr. Haight without provocation or justification.

37. This custom or practice is further evidenced by the fact that two supervisory officers personally took part in the assault, and, following the assault, worked with and directed all the

other corrections officers who were involved to review surveillance videos so that each incident report stemming from the assault admitted and omitted the same facts and circumstances based on the video surveillance footage they knew existed with respect to the assault, all in an attempt to cover up the use of excessive force against Mr. Haight.

38. Erie County and its officials with decision-making authority at the ECP were aware that supervisory officers were personally involved in assaulting Mr. Haight, but they were not reprimanded, disciplined and/or retrained for their use of excessive force against him.

39. The ECP is aware that one of the supervisory officers involved in the assault has had numerous complaints and grievances filed against him for allegations that he used excessive force against other inmates prior to the excessive use of force used against Mr. Haight.

40. Erie County and its officials with decision-making authority at the ECP are aware that their supervisory officers direct and authorize the use of excessive force against inmates, yet they do not reprimand, discipline and/or retrain those supervisory officers for giving such authorization or direction to other corrections officers at the ECP.

41. Erie County and its officials with decision-making authority at the ECP were aware of complaints and grievances filed against supervisory officers by inmates for allegations that they use, direct or authorize the excessive use of force against them, but they were never reprimanded, disciplined and/or retrained for their use of excessive force.

42. Because supervisory officers were not reprimanded, disciplined and/or retrained for their prior use of excessive force against inmates, they knew, and subordinate corrections officers knew, that the ECP has a custom or practice allowing the use of excessive force against inmates.

43. The ECP is aware that many of the corrections officers involved in assaulting Mr. Haight have had numerous complaints and grievances filed against them for similar allegations

that they previously used excessive force against other inmates, yet they were not reprimanded, disciplined and/or retrained for their use of excessive force.

44. The custom or practice at the ECP of using excessive force against inmates proximately caused harm to Mr. Haight.

45. If the ECP did not have a custom or practice at the ECP of using excessive force against inmates, Mr. Haight would not have had excessive force used against him, which thus deprived him of his constitutional right to be free from the use of excessive force.

WHEREFORE, Mr. Haight respectfully requests that this Court enter a judgment in its favor and against Erie County for compensatory damages, attorney's fees and costs, interest and all other relief as this Court deems just and proper.

## COUNT II

**Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.***

**(Mr. Haight v. Erie County)**

46. All paragraphs herein are incorporated by reference.

47. At all relevant times, staff and administrators at the ECP, including medical staff and corrections officers, were aware that Mr. Haight had a record of diagnoses of bi-polar and anxiety disorder and was receiving medication from the ECP for his mental disorders.

48. At all relevant times, staff and administrators at the ECP, including medical staff and corrections officers, perceived Mr. Haight as having diagnoses of bi-polar and anxiety disorder and was receiving medication from the ECP for his mental disorders.

49. Mr. Haight's intake and housing classification records stated that he suffered from bi-polar and anxiety disorder.

50. Mr. Haight was provided medications for his bi-polar and anxiety disorders such as Lithium while he was incarcerated for his ECP, and he took those medications at all relevant times while incarcerated at the ECP.

51. Mr. Haight's mental disorders substantially limit one or more major life activities.

52. At all relevant times, the corrections officers involved in assaulting Mr. Haight were aware that he had a disability resulting from bi-polar and anxiety disorders.

53. The ECP fails to train its corrections officers in handling mentally disabled persons like Mr. Haight, even though such training would not impose an undue burden on Erie County.

54. The ECP was required to make reasonable modifications to accommodate peaceful encounters between inmates with mental disabilities like Mr. Haight and corrections officers and not to discriminate against those inmates because of their disabilities.

55. The ECP's failure to establish policies or provide training for its corrections officers in handling encounters between inmates with mental disabilities like Mr. Haight and those officers resulted in discrimination against Mr. Haight and caused him to suffer significant life-threatening injuries.

WHEREFORE, Mr. Haight respectfully requests that this Court enter a judgment in its favor and against Erie County for compensatory damages, punitive damages, attorney's fees and costs, interest and all other relief as this Court deems just and proper.

## COUNT III

**Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.***

**(Mr. Haight v. Erie County)**

56. All paragraphs herein are incorporated by reference.

57. The ECP receives federal financial assistance.

58. For all the reasons stated in Count IV under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, the ECP's failure to establish policies or provide training for its corrections officers in handling encounters between inmates with mental disabilities like Mr. Haight and those officers resulted in discrimination against Mr. Haight and caused him to suffer significant life-threatening injuries.

WHEREFORE, Mr. Haight respectfully requests that this Court enter a judgment in its favor and against Erie County for compensatory damages, punitive damages, attorney's fees and costs, interest and all other relief as this Court deems just and proper.

Respectfully submitted,

THE LAW OFFICES OF TIMOTHY P. O'BRIEN

/s/ Alec B. Wright
Alec B. Wright
Pa. ID No. 316657

Timothy P. O'Brien
Pa. ID No. 22104

239 Fourth Avenue
Investment Building, Suite 2013
Pittsburgh, PA 15222
(412) 232-4400

*Counsel for Plaintiff, Patrick Haight*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
PATRICK HAIGHT

## DEFENDANTS
ERIE COUNTY

**(b)** County of Residence of First Listed Plaintiff: Erie
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: 
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
ALEC B. WRIGHT, The Law Offices of Timothy P. O'Brien, 239 Fourth Avenue, Suite 2103, Pittsburgh, PA 15222 (412) 232-4400

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

*PERSONAL INJURY*
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

*Habeas Corpus:*
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

*Other:*
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause:
Excessive force questions against pre-trial detainees

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 03/01/2018
SIGNATURE OF ATTORNEY OF RECORD: /s/Alec B. Wright

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

[Print]  [Save As...]  [Reset]

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.